UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NOS. 3:09cv476-RJC-DSC AND 3:09cv511-RJC-DCK

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, ) ) ) Plaintiff ) ) vs. ) ) RENNE ACQUISITIONS CORP., d/b/a ) AUTO RESOURCES GROUP; AUTO ) RAIL SERVICES OF NEW BOSTON, ) INC.; AUTO RAIL SERVICES OF ) MARYLAND, INC.; AUTO RAIL ) SERVICES OF KTP, INC.; AUTO RAIL ) SERVICES OF PENNSYLVANIA, INC.; ) and TOTAL DISTRIBUTION ) SERVICES, INC., ) ) Defendants. ) ) _____ ) LIBERTY MUTUAL INSURANCE ) COMPANY, ) ) Plaintiff ) ) vs. ) ) RENNE ACQUISITIONS CORP., d/b/a ) AUTO RESOURCES GROUP; AUTO ) RAIL SERVICES OF NEW BOSTON, ) INC.; AUTO RAIL SERVICES OF ) MARYLAND, INC.; AUTO RAIL ) SERVICES OF KTP, INC.; AUTO RAIL ) SERVICES OF PENNSYLVANIA, INC.; ) and TOTAL DISTRIBUTION ) SERVICES, INC., ) ) Defendants. ) | ORDER |

**THIS MATTER** is before the Court on the defendant Total Distribution Services, Inc.'s

("TDSI's") motion to dismiss the complaint filed by the plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") in Case No. 3:09cv476 (Doc. No. 4); TSDI's motion to dismiss the complaint filed by the plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") in Case No. 3:09cv511 (Doc. No. 22); and the parties' respective briefing on these motions. For the reasons stated below, the Court will **DENY** the defendant's motions to dismiss and **TRANSFER** the above-captioned cases to the Western District of Kentucky.

I. BACKGROUND

These lawsuits arose from damages sustained to automobiles between 1999 and 2006 at four distribution facilities operated by Renne Acquisitions Corporation, d/b/a Auto Resources Group, and several of its subsidiaries (collectively, "ARG").[1] ARG had contracted with TDSI, a logistics company, to unload automobiles from incoming railway cars at each of its facilities and route them to various automobile dealers. In 2006, TDSI filed a complaint in the Western District of North Carolina seeking to recover damages from ARG for breach of several written operating agreements that purported to make ARG liable to TDSI for damages to automobiles that occurred during unloading. (Case No. 3:06cv170, hereafter "the 2006 lawsuit"). According to TDSI's complaint, it sustained $672,507 in damages at a facility in New Boston, Michigan; $433,394 in damages at a facility in Annapolis Junction, Maryland; $344,976 in damages at a facility in O'Bannon, Kentucky; and $241,536 in damages at a facility in Twin Oaks, Pennsylvania. In April of 2007, the Court entered a Stipulated Order of Judgment in favor of TDSI and against ARG in the amount of $1,851,214.23. (Case No. 3:06cv170; Doc. No. 16).

---

[1] These subsidiaries, also named individually as defendants, are Auto Rail Services of New Boston, Inc.; Auto Rail Services of Maryland, Inc.; Auto Rail Services o KTP, Inc.; and Auto Rail Services of Pennsylvania, Inc.

After attempting to enforce the judgment from the 2006 lawsuit for over two years, and apparently after discovering that ARG had become insolvent, TDSI filed complaints in the Western District of Kentucky on October 9, 2009, against three of ARG's former insurers, Hartford Fire Insurance Company ("Hartford"), Liberty Mutual Insurance Company ("Liberty Mutual") and St. Paul Fire & Marine Insurance Company ("St. Paul"). See Total Distrib. Servs., Inc. v. Hartford Fire Insurance Co. et al., Case No. 3:09cv820 (W.D. Ky. filed October 9, 2009) (hereafter "the Kentucky lawsuit"). Essentially, TDSI alleges that Hartford, St. Paul, and Liberty Mutual are each liable to satisfy the judgment rendered against ARG in the 2006 lawsuit.

Hartford filed an answer to TSDI's complaint in the Kentucky lawsuit and appears willing to defend against TDSI's claims in that forum. St. Paul and Liberty Mutual, however, responded in November of 2009 by filing separate complaints in this forum, each seeking a declaratory judgment disclaiming the insurer's liability to satisfy any part of the judgment entered against ARG in the 2006 lawsuit.

On December 1, 2009, TDSI moved to dismiss St. Paul's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that St. Paul's claim for declaratory judgment is improper in light of the earlier-filed Kentucky lawsuit. On February 1, 2010, TDSI moved to dismiss Liberty Mutual's lawsuit for the same reason. Meanwhile, St. Paul and Liberty Mutual filed motions to dismiss the Kentucky lawsuit or transfer the case to this forum. The district judge presiding over the Kentucky lawsuit denied St. Paul's and Liberty Mutual's motions, finding that venue is proper in the Western District of Kentucky and discovery would be no more convenient if that lawsuit were to be litigated here. Total Distribution Servs., Inc. v. Hartford Fire Ins. Co. et al., No. 3:09cv820 (W.D. Ky. Feb. 3, 2010) (denying motions to dismiss and consolidating the cases). Each of TDSI's motions to dismiss have been fully briefed and are now ripe for the Court's

3

review.[2]

## II. THE "FIRST-FILED" RULE

When a lawsuit is filed in multiple forums, the Fourth Circuit adheres to the "first-filed" rule, which holds that "the first suit should have priority, absent the showing of [a] balance of convenience in favor of the second action." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594-95 (4th Cir. 2004) (quoting Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974)); accord Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 300 (4th Cir. June 7, 2001) (unpublised). Multiple lawsuits are subject to the first-filed rule if "the same factual issues" provide the basis for each suit. Allied-Gen. Nuclear Serv's v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982). Application of the first-filed rule requires a district court to dismiss, stay, or transfer a later-filed lawsuit in deference to the earlier-filed action. See id. (citing Carbide & Carbon Chem. Corp. v. U.S. Indus. Chems., Inc., 140 F.2d 47, 49 (4th Cir. 1944)) (the earlier-filed lawsuit must proceed "to the exclusion of" subsequently-filed lawsuits); see also Quesenberry v. Volvo Group N. Am., Inc., No. 1:09cv22, 2009 WL 648658, at *2-3 (W.D. Va. March 10, 2009) ("[T]he "first-to-file" rule supports dismissing, staying or transferring [an] action . . . ."); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) ("Where the same parties have filed similar litigation in separate federal fora, . . . the later-filed action should be stayed, transferred, or enjoined.").

## III. DISCUSSION

**A. The Kentucky Lawsuit is the First-Filed Lawsuit**

As a preliminary matter, the instant claims before the Court are based upon the same factual

---

[2] Although the Court has not consolidated these cases, the commonality of issues between each of TDSI's motions to dismiss warrants their disposition in a single Order.

issues raised in the Kentucky lawsuit, not the 2006 lawsuit, and are therefore subject to dismissal, stay or transfer under the first-filed rule. Allied-Gen., 675 F.2d at 611 n.1. Both the Kentucky lawsuit and the instant lawsuits involve the same issues of fact: whether St. Paul and Liberty Mutual entered into the indemnity agreements as alleged by TDSI and if so, whether TDSI may enforce those agreements to satisfy its judgment. In fact, the claims for declaratory relief brought by St. Paul and Liberty Mutual are really compulsory counterclaims to the claims asserted by TDSI in the Kentucky lawsuit. See Fed. R. Civ. P. 13(a) (a party must plead counterclaims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim").

In contrast, there are almost no common issues of fact between these lawsuits and the 2006 lawsuit. Although this current round of litigation is in some way predicated on the judgment entered by Court in the 2006 lawsuit, the factual issues raised therein were whether ARG entered into the operating agreements as alleged by TDSI, and if so, whether ARG damaged the automobiles in breach of those agreements. ARG never raised the issue of indemnity as a defense to any of TDSI's claims, nor did ARG implead its insurers as third-party defendants. It is the Kentucky lawsuit, not the 2006 lawsuit, that shares common issues of fact with the claims now pending before this Court.

Liberty Mutual argues that the first-filed rule should not apply to the Kentucky lawsuit because TDSI engaged in forum shopping by filing new complaints rather than litigating these claims as part of the 2006 lawsuit. This argument is without merit. The forum shopping exception typically applies to actions for declaratory judgment, and only when "the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum-shopping, or a race to the courthouse." Learning Network, 11 F. App'x 297 at 301; accord Employers Ins. of Wasau v. Fox Entm't Group, Inc., 522 F.3d 271, 275-276 (2d Cir. 2008) (citing Factors Etc., Inc.

5

v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978) (recognizing that "an improper anticipatory declaratory judgment action" will preclude application of the first-filed rule). Here, TDSI's claims are for breach of contract, not declaratory judgment; it is Liberty Mutual and St. Paul who have filed complaints seeking declaratory relief. And if TDSI chose to file suit in the Western District of Kentucky for strategic purposes, it was a proper rather than improper exercise of forum selection. See Ellicott, 502 F.2d at 180 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (the rationale behind the first-filed rule is that "the plaintiff . . . is ordinarily entitled to choose its forum"). The Kentucky lawsuit is therefore rightly considered the first-filed action in this matter, and the first-filed rule applies.

**B. A Balance of Convenience Favors the Western District of Kentucky**

Having found that the Kentucky lawsuit is first-filed, the Court next considers whether a "balance of convenience" nevertheless favors litigating the plaintiffs' claims in this forum. Volvo Equipment, 386 F.3d at 595. The factors the Court is to consider under this inquiry are "essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." Employers Ins., 522 F.3d at 275 (quoting Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 178 F. Supp. 2d 459, 465 (S.D.N.Y.2002)). See also Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 901 (D. Md. 2008); Christian Broadcasting Network, Inc. v. Busch, No. Civ. A. 2:05cv558, 2006 WL 51190, at *5 (E.D. Va. Jan. 9, 2006). Eleven general factors guide the Court's analysis of a motion to transfer venue: "(1) the plaintiff's choice of forum; (2) the residence of the parties; (3) access to evidence; (4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses; (5) the possibility of a view by the jury; (6) the enforceability of a judgment; (7) the relative advantages and obstacles to a fair trial; (8) practical issues affecting trial expediency and efficiency; (9) the relative court congestion between the

districts; (10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of conflict of laws." Nutrition & Fitness, Inc., 264 F. Supp. 2d at 362 (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93, 96 (W.D.N.C. 1990)). Agreeing with the parties that there are no scenes requiring the jury's view and no relative advantages and obstacles to a fair trial, the Court's discussion is limited to the remaining factors.

### 1. Plaintiff's Choice of Forum

For the reasons stated above, the Court finds that this factor weighs very strongly in favor of TDSI's chosen forum, the Western District of Kentucky. See Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil, 330 U.S. at 508) ("[T]he plaintiff's choice of forum should rarely be disturbed.").

### 2. Residence of the Parties

With the exception of ARG, which is a North Carolina corporation, none of the parties are residents of North Carolina or Kentucky. St. Paul is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Liberty Mutual is a Wisconsin corporation with its principal place of business in Boston, Massachusetts. TDSI is a Virginia corporation with its principal place of business in Jacksonville, Florida. And although ARG is a North Carolina resident, it is currently in default for failing to answer the complaints filed by St. Paul and Liberty Mutual. (Doc. No. 20; Case No. 3:09cv511, Doc. No. 30). ARG's participation in these lawsuits is, at this point, doubtful. Thus, as a practical matter, this factor favors neither forum.

### 3. Access to Evidence

Liberty Mutual alleges in its complaint that its policy was underwritten in Louisville, Kentucky. St. Paul, on the other hand, alleges that its policy was underwritten in the Western District

7

of North Carolina. Thus, evidence related to the issuance of these policies is equally present in both districts.

The losses sustained by TDSI giving rise to the 2006 lawsuit occurred in facilities operated by ARG in Kentucky, Michigan, Pennsylvania and Maryland. The Court therefore anticipates that physical evidence, documents and third-party witnesses will be located in each of those states, including Kentucky. However, evidence related to ARG's defense of the 2006 lawsuit is likely to be found in this district. Whether ARG adequately notified St. Paul and Liberty Mutual of the 2006 lawsuit is material to the plaintiffs' claims asserted here, as well as the claims asserted by TDSI in the Kentucky lawsuit. Although evidence is likely to be found in both districts, this factor weighs slightly in favor litigating this case in the Western District of North Carolina.

### 4. Availability of Compulsory Witnesses

In their briefing, the parties have identified potential witnesses in Kentucky, Maryland, Michigan, North Carolina, and Pennsylvania. Thus, wherever this action is litigated, the compelled attendance of non-resident, non-party witnesses will be an issue. Both St. Paul and Liberty Mutual make much of the fact that ARG is not a named party to the Kentucky lawsuit, depriving that court of subpoena power to compel the attendance of ARG personnel who reside outside the Western District of Kentucky. See Fed R. Civ. P. 45(b)(2). First, ARG's status as a non-party to the Kentucky lawsuit does not weigh against transfer under this factor because neither plaintiff has done more than speculate that ARG witnesses are in fact unwilling to appear. See Simpson v. Snyder's of Hanover, Inc., No. 1:05cv354, 2006 WL 1642227, at *5 (W.D.N.C. June 12, 2006) (rejecting a plaintiff's argument under this factor that amounted to "little more than speculat[ion] about the unavailability of witnesses due to the lack of subpoena power"). Moreover, even assuming that these witnesses will refuse to appear, neither plaintiff has shown why an alternative to live testimony, such as video

deposition, would be insufficient. See Borgwarner, Inc. v. Honeywell Int'l, Inc., No. 1:07cv184, 2008 WL 394991, at *4 (W.D.N.C. Feb. 11, 2008). Because witness availability will burden the parties in either venue, this factor does not favor one district over the other.

### 5. Enforceability of Judgment

TDSI argues under this factor that proceeding with parallel litigations could lead to inconsistent judgments, thereby raising issues of enforceability. Often stated in the context of parallel proceedings pending in domestic and foreign jurisdictions, "the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." Gross Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 363 (8th Cir. 2007) (quoting Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C. Cir. 1984)); accord Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006); Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 629 (5th Cir. 1996). Thus, TDSI's concerns are unfounded because the doctrine of res judicata precludes the possibility of inconsistent judgments. See Mead Data Cent., Inc. v. West Pub. Co., 679 F. Supp. 1455, 1463-65 (S.D. Ohio 1987) (holding that inconsistent judgments in parallel district court proceedings "are, quite simply, impossible as a legal matter"). Neither party has raised a legitimate issue under this factor.

### 6. Practical Issues Affecting Trial Expediency and Efficiency

Although litigating parallel proceedings would not create issues of enforceability of judgment, it would place a significant burden on judicial resources and efficiency. "The burdens on the parties, witnesses, and the judicial system from having two cases involving the same . . . issues proceed through litigation in separate federal courts is obvious. Such burdensome duplication should

9

be avoided wherever possible." Cell Genesys, Inc. v. Applied Research Sys. ARS Holding N.V., No. 04-1407, 2005 WL 1041098, at *6 (D.D.C. Jan. 18, 2005). Here, the claims to be litigated in both forums are essentially identical. Moreover, the Western District of Kentucky has already considered and denied St. Paul's and Liberty Mutual's motions to dismiss or transfer that case; thus, that case is likely to proceed to adjudication on the merits. The Court's legitimate interest in avoiding a duplication of judicial resources and burden to the parties and witnesses heavily favors the Western District of Kentucky.

### 7. Relative Court Congestion Between the Districts

St. Paul notes that its lawsuit is the 476th civil case brought before this Court in 2009, while the Kentucky lawsuit is the 820th case brought in that forum, and that these statistics suggest that the Western District of Kentucky is more congested than the Western District of North Carolina. However, these figures are meaningless without comparing them to the total number of cases filed in each jurisdiction, the number of judges seated in each district, and the number of those cases that remain pending, information that St. Paul has not provided to the Court. Thus, the Court will attach no weight to this factor.

### 8. The Interest of Resolving Localized Controversies at Home and the Avoidance of Conflict of Laws

The overlapping nature of these factors often warrants their discussion together. The dealings between the parties to this litigation spans several states, including Kentucky and North Carolina; the resulting claims asserted by St. Paul and Liberty Mutual are not "localized controversies" that either state can claim an overriding interest in resolving. However, there remains an interest that weighs against transfer when "under the principles of conflicts of laws applicable in the state in which the action was brought, that state would apply its own law, or if the conflicts principles in that

state are unclear[.]" 15 C. Wright & A. Miller, Federal Practice and Procedure § 3854, at 291 (3d ed. 2007).

At this stage in the proceedings, the parties dispute whether the substantive law of North Carolina or Kentucky would apply under the conflicts rules applied in this forum. If North Carolina law applies, then it would be beneficial to resolve St. Paul's and Liberty Mutual's claims here, but the possibility that Kentucky law will apply weighs equally in favor of that forum. In the end, regardless of which state's substantive law will apply, North Carolina conflicts-of-law principles are not so unsettled to raise a question as to the Western District of Kentucky's competence to apply them. See Commercial Equip. Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 979 (W.D.N.C. 1990).

Upon consideration of these factors as well as the entire record in these cases, the Court does not find a balance of convenience in favor of this forum such that the first-filed rule should be ignored. Accordingly, the claims asserted by St. Paul and Liberty Mutual in the instant lawsuits must be dismissed, stayed, or transferred in deference to the first-filed Kentucky lawsuit.

**C. Transfer Is a Suitable Alternative to Stay or Dismissal**

As an alternative to a stay of the proceedings or dismissal, a district court entertaining a second-filed action "may, in its sound discretion, transfer the case to the first filed court pursuant to 28 U.S.C. § 1404(a)." Old Republic Nat'l Title Ins. Co. v. Transcon. Title Co., No. 1:07cv525, 2007 WL 2915171, at *3 (E.D. Va. Oct. 4, 2007). ARG is a named defendant in the lawsuits pending in this Court but is not a party to the Kentucky lawsuit. This incongruence between parallel litigations, even if relatively slight, weighs against outright dismissal if transfer is a viable option. Venue in the Western District of Kentucky is proper, and as is discussed above, transfer would serve the interests of justice and convenience of the parties. See 28 U.S.C. § 1404(a). Moreover, should

it be deemed appropriate, consolidation of these claims into the Kentucky lawsuit appears feasible.[3] Finally, the Court has conferred with the district judge presiding over the Kentucky lawsuit, and he is willing to accept transfer of these cases. Thus, in the Court's discretion, the interests of justice would be best served by a transfer of these cases to the Western District of Kentucky.

**IV. CONCLUSION**

**IT IS, THEREFORE, ORDERED** that the defendant's motions to dismiss (Case No. 3:09cv476, Doc. No. 4; Case No. 3:09cv511, Doc. No. 22) are **DENIED**, and the above-captioned cases (3:09cv476-RJC-DSC and 3:09cv511-RJC-DCK) are **TRANSFERRED** to the Western District of Kentucky.

**SO ORDERED.**

Signed: June 14, 2010

Robert J. Conrad, Jr.
Chief United States District Judge

---

[3] If a difference in conflicts-of-law principles between North Carolina and Kentucky would lead to the application of significantly different substantive law, then consolidation of the cases might be infeasible, a factor that weighs against transfer. See Van Dusen v. Barrack, 376 U.S. 612, 644-45 (1964). However, neither party has pointed to differences in the substantive law of North Carolina and Kentucky to suggest that consolidation of these claims would be infeasible. See Kane-DuPage Fin. Planning & Serv. Group, Ltd. v. Dribeck Importers, Inc., No. 88C4329, 1989 WL 6483, at *2 n.2 (N.D. Ill. Jan. 20, 1989).